IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-153

No. 9A21

Filed 17 December 2021

IN THE MATTER OF: L.M.M.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered on 27 October 2020 by Judge John K. Greenlee in District Court, Gaston County. This matter was calendared for argument in the Supreme Court on 12 November 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Ashley A. Crowder for petitioner-appellees.*

*No brief for appellee Guardian ad Litem.*

*Richard Croutharmel for respondent-appellant father.*

NEWBY, Chief Justice.

Respondent-father appeals from the trial court's order terminating his parental rights to L.M.M. (Lisa).[1] Because we hold the trial court did not err in concluding that grounds existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(7), we affirm the trial court's order.

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

¶ 2 This case arises from a private termination action filed by petitioners, Mrs. and Mr. O., who are Lisa's maternal aunt and uncle. Lisa has been in petitioners' care since 7 July 2017 when Lisa's mother passed away and respondent was charged with her murder.

¶ 3 Respondent and Lisa's mother met when they both attended an inpatient rehabilitation facility for substance abuse. They were subsequently "kicked out" for failure to follow the rules. Respondent and the mother were married in 2015 and Lisa was born shortly thereafter. Respondent and the mother continued to engage in substance abuse after Lisa was born.

¶ 4 On 7 July 2017, police were dispatched to the family's residence when respondent called 911 after finding the mother not breathing. Petitioners learned of the mother's passing, and Mrs. O. drove to the residence. Mrs. O. asked respondent if she and Mr. O. could watch Lisa for the weekend, and respondent agreed. Three days later, petitioners filed a complaint for child custody in Mecklenburg County and obtained an ex parte emergency custody order on 11 July 2017. The order did not allow respondent visitation pending future court orders. On 19 July 2017, respondent was arrested and charged with first-degree murder for the mother's death. On 9 October 2017, the District Court, Mecklenburg County, entered a temporary custody order awarding petitioners custody of Lisa.

On 10 May 2018, respondent pled guilty to involuntary manslaughter and was sentenced to thirteen months of imprisonment. He was released from incarceration on or about 8 August 2018. Respondent did not have any contact with petitioners or Lisa during his incarceration. After his release, between 16 October 2018 and 18 January 2019, respondent sent petitioners four money orders totaling $800.00.

Around October or November of 2018, respondent hired an attorney to assist him with the pending custody case in Mecklenburg County. On 7 November 2018, petitioners filed for and received another ex parte emergency custody order. Around December of 2018, respondent fired his attorney. Respondent did not thereafter hire another attorney to represent him in the custody proceeding.

On or about 9 November 2018, petitioners filed a petition in Stanly County to terminate respondent's parental rights to Lisa. On 3 September 2019, petitioners voluntarily dismissed the action and filed a new petition in Gaston County seeking to terminate respondent's parental rights, alleging the grounds of neglect, dependency, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1), (6)–(7) (2019).

On 27 October 2020, the trial court entered an order concluding that grounds existed to terminate respondent's parental rights based upon neglect and willful abandonment. N.C.G.S. § 7B-1111(a)(1), (7). The court further concluded it was in Lisa's best interests that respondent's parental rights be terminated. Accordingly,

the trial court terminated respondent's parental rights. Respondent seeks appellate review.[2]

On appeal respondent argues the trial court erred by concluding grounds existed to terminate his parental rights. A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under subsection 7B-1111(a). N.C.G.S. § 7B-1109(f). If the petitioner meets his burden during the adjudicatory stage, "the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110 (2015)).

Respondent only challenges the trial court's determination at the adjudicatory stage that grounds existed to terminate his parental rights.

"We review a trial court's adjudication under N.C.G.S.

---

[2] On 17 February 2021, petitioners filed a motion in this Court to dismiss respondent's appeal and two motions for sanctions on the ground that respondent's notice of appeal was not timely filed. On 10 March 2021, this Court denied petitioners' motion to dismiss. On 29 March 2021, acknowledging that his notice of appeal was untimely, respondent filed a petition for writ of certiorari seeking review of the order terminating his parental rights. This Court now allows respondent's petition for writ of certiorari.

§ 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.'" *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)); *see also* N.C.G.S. § 7B-1109(f) (2019). Unchallenged findings are deemed to be supported by the evidence and are "binding on appeal." *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019). "Moreover, we review only those [challenged] findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019).

*In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 737–38 (2020) (alteration in original).

## I.    Willful Abandonment

A trial court may terminate parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(7). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251, 485 S.E.2d at 617 (quoting *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986)). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be

determined from the evidence." *In re Searle,* 82 N.C. App. at 276, 346 S.E.2d at 514. "[T]he 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. 71, 77, 833 S.E.2d 768, 773 (2019) (quoting *In re D.E.M.*, 257 N.C. App. 618, 619, 810 S.E.2d 375, 378 (2018)).

¶ 12 Petitioners filed the petition to terminate respondent's parental rights on 3 September 2019. Thus, the relevant six-month window for willful abandonment is 3 March 2019 to 3 September 2019.

¶ 13 Respondent challenges several of the trial court's findings of fact as unsupported by the evidence. We first address respondent's challenge to finding of fact 100. The trial court found:

> [Respondent] claims that he stopped sending money, cards and gifts because his probation officer told him that he could not have any contact with the victim's family. There is no court order or document that says this. In fact, [respondent] had been having "contact" through sending support to Petitioners for the benefit of the juvenile, and sending the Christmas gift items. The court does not find this credible as [respondent] had two attorneys at this time, his hired representation in the Mecklenburg County custody case and the appointed attorney in the Stanley [sic] County TPR matter.

Respondent argues this finding "is fallaciously reasoned because the absence of evidence is not evidence of absence," and the fact that there was no collateral evidence

to support respondent's testimony does not "negate its veracity." He further argues that the finding impermissibly shifts the evidentiary burden to him. We disagree.

It is the trial court's responsibility "to pass upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *In re A.R.A.*, 373 N.C. 190, 196, 835 S.E.2d 417, 422 (2019) (quoting *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167–68). Here the finding states that the trial court did not find respondent's testimony credible. Because the trial court is the proper fact-finding body to make credibility determinations, we reject respondent's argument. Additionally, the trial court did not improperly shift the burden to respondent. Rather, the court's finding demonstrates that respondent's testimony failed to rebut petitioners' clear, cogent, and convincing evidence that respondent willfully stopped sending money, cards, and gifts for Lisa. *In re A.C.*, 378 N.C. 377, 2021-NCSC-91, ¶ 30 (rejecting the argument that the trial court had inappropriately shifted the evidentiary burden to the respondent and concluding instead that the respondent failed to rebut the petitioner's clear, cogent, and convincing evidence).

Respondent also challenges findings of fact 82 and 112, in which the court found that there was no prohibition of contact between respondent and Lisa or petitioners after May 2018, and that respondent was not prohibited from contacting Lisa during the relevant six-month period "due to sickness, incarceration, or any other valid reason." Respondent argues that his probation officer told him to stop

sending things to petitioners in 2019, and that petitioners have not refuted this argument. As we reject respondent's challenges to finding of fact 100, we likewise reject his challenges to findings of fact 82 and 112 insofar as his arguments are based on the credibility of his testimony. There was no other evidence that respondent was prohibited from having contact with Lisa or petitioners during the relevant six-month period. Notably, the trial court did find that respondent's lack of contact from his arrest until his conviction in May 2018 was not willful because his attorney advised him not to have contact with the mother's family. Respondent's arguments are overruled.

Respondent next challenges the portion of finding of fact 83 that states he did not send any response to the letter Mrs. O. sent to him dated 29 July 2018, in which she told respondent she forgave him for killing her sister and that Lisa was being taken care of in a safe environment. Respondent argues that he sent a letter in response apologizing for everything that happened and stating that he wished to see Lisa. At the hearing, however, respondent testified that he did not send a response to the letter, stating that he "would have liked to . . . [b]ut [he] didn't." Additionally, Mrs. O. testified that respondent did not respond to her letter. Therefore, we reject respondent's challenge to this finding.

Respondent next challenges finding of fact 84. The trial court found that "[i]t is unclear as to what [respondent] knew about who legally had custody of the minor

child while he was incarcerated. Who had legal custody, however, was not material to [respondent's] ability to see the juvenile." Respondent argues that it was "highly relevant" that the maternal relatives had legal custody of Lisa because he was ordered to have no contact with them. There is no evidence, however, that respondent was ordered not to have contact with the maternal relatives. The trial court found that respondent's attorney in the criminal case advised respondent not to have contact with the family while the criminal case was pending, and therefore his lack of contact from his arrest until his conviction in May 2018 was not willful. As stated above, the trial court did not find credible respondent's testimony that his probation officer told him not to have contact with the maternal relatives. The maternal grandmother and respondent testified that the custody order did not allow him any visitation, but there is no evidence he was prohibited from having contact. Therefore, we reject respondent's challenge to this finding.

¶ 18        Respondent challenges finding of fact 87 as unsupported by the evidence. The trial court found that respondent "did not open up the conversation about visitation in any way shape or form. He did not email, send a letter, call or use his family members to initiate a conversation." Respondent contends that he sent a letter to petitioners "indicating he would love to see Lisa." Respondent testified that he sent a letter to petitioners after he was released from prison in August of 2018. Mrs. O. testified that she believed she received a letter from respondent in September 2019.

The trial court here properly recognized the relevant time period for determining whether respondent's conduct constituted willful abandonment as 3 March 2019 to 3 September 2019. Because respondent's testimony indicates that he sent the letter in August of 2018 after he was released from incarceration, the trial court could in its discretion determine that respondent did not engage in any conversation about visitation during the relevant period for evaluating willful abandonment. As such, we reject respondent's challenge.

¶ 19        Respondent next challenges findings of fact 95, 96, and 97. The trial court found that respondent "did not follow through with the legal route to obtain visitation" with Lisa as he did not take any further steps to pursue visitation after he fired his attorney around December of 2018. The court also found that respondent did not take any further steps outside of the legal process to seek visitation or contact Lisa after he fired his attorney in December of 2018. Respondent acknowledges that these findings are true but negates the trial court's conclusion that these actions were willful. Because respondent has not challenged the findings of fact for their lack of evidentiary support, they are deemed to be supported by the evidence and are binding on appeal. *See In re Z.L.W.*, 372 N.C. at 437, 831 S.E.2d at 65. Moreover, as stated above, the trial court did not find respondent's testimony on this subject to be credible. Therefore, respondent's argument is without merit.

¶ 20 Respondent next challenges findings of fact 98, 105, and 106, which state that he did not send any cards, gifts, or letters to Lisa after January 2019 and that all other actions by respondent were taken after the petition to terminate his parental rights was filed on 3 September 2019. Respondent argues that these findings conflict with the evidence as well as finding of fact 104, in which the trial court found that respondent sent a card with a note and some presents to petitioners for Lisa on 31 May 2019. We agree. Respondent testified that he sent a card and gift to Lisa in May 2019 and presented a receipt from the postal service dated 31 May 2019. Accordingly, we disregard findings of fact 98, 105, and 106 to the extent they indicate respondent did not send a card and gift on 31 May 2019. *See In re J.M.J.-J.*, 374 N.C. 553, 559, 843 S.E.2d 94, 101 (2020).

¶ 21 Respondent challenges finding of fact 99 in which the trial court found that respondent "has not sent, or attempted to send, any further money or financial support to Petitioners, in support of [the] juvenile or otherwise, since February 1, 2019." Respondent's own testimony supports the trial court's finding. Respondent testified that he did not send any money or support payments to petitioners after 1 February 2019. Therefore, respondent's challenge is overruled.

¶ 22 Respondent next challenges finding of fact 101 which states that he "did not make any attempts to show his love, affection, or care for [Lisa] since January 2019." Respondent argues that evidence from both parties and unchallenged finding of fact

104 demonstrate that he sent cards and gifts to Lisa after 1 February 2019, which he contends showed his love for her. Respondent asserts that Mrs. O. testified she received two cards from respondent in 2020 and a letter in September 2019. Besides the card and gift respondent sent in May of 2019, which the trial court acknowledged in finding of fact 104, respondent's other cards and the letter, as previously addressed, fall outside the six-month determinative period preceding the filing of the termination petition on 3 September 2019. Thus, the trial court did not err, and respondent's challenge is overruled.

¶ 23        Respondent similarly challenges finding of fact 115, which seems to encompass various findings above, including that respondent failed to make a serious or sincere effort to be in the child's life since 1 February 2019. In this finding, the trial court recognized the card and gift respondent sent to the child in May of 2019, but concluded that this one action without more is insufficient effort. For the reasons stated above addressing respondent's inaction in several aspects, we reject respondent's challenge to this finding.

¶ 24        Respondent next challenges findings of fact 108, 109, and 113. In finding of fact 108, the trial court found that due to the improperly filed termination petition in Stanly County, respondent had an additional eight months of time to make an effort to show his parental concern and care for Lisa. The trial court found in finding of fact 109 that after respondent was put on notice that petitioners wished to terminate his

parental rights in the Stanly County termination case, he "took no action to try to assert his visitation rights with the minor child or to maintain or reestablish a relationship with the minor child aside from sending Christmas gifts and making four child support payments." The court found in finding of fact 113 that respondent did not assert his rights and obtain visitation in the custody action in order to show that he was trying to maintain or reestablish a relationship with Lisa. Respondent argues that he hired an attorney to assist him in the Mecklenburg County custody case and relied on that attorney until he fired her in December 2018. Respondent's involvement in the Mecklenburg County custody case was outside the relevant six-month period. Moreover, it is clear that the filing of the Stanly County termination petition put respondent on notice of petitioners' intentions. Additionally, his argument ignores the fact that he took no further action after he fired his attorney in the custody case. Therefore, we reject respondent's argument.

¶ 25    Respondent next challenges findings of fact 120, 121, and 123. The trial court found that respondent "has done close to nothing in this case," that his actions since his release from incarceration "were very sporadic and inconsistent," and that his "actions to maintain or reestablish a relationship with the minor child were woefully inadequate." Respondent argues that he used three different attorneys to fight for his visitation and parental rights to Lisa and that at least one of the attorneys had represented him since November of 2018. Respondent's argument, however, ignores

that he had almost no contact with Lisa or petitioners since Lisa was last in his care. Respondent last saw and spoke to Lisa in July 2017; he only sent one card and gift in the six months preceding the filing of the termination petition; he sent additional gifts in December 2019, early 2020, and April 2020, after the termination petition was filed; he did not send any financial support after February 2019; and although he obtained an attorney in the custody action, he did nothing else in the matter after firing his attorney in December 2018. This evidence supports the trial court's findings. We reject respondent's challenges to findings of fact 126 and 127 for the same reasons.

¶ 26        Finally, respondent challenges findings of fact 124, 125, and 129. The trial court found that respondent's actions demonstrated willful and intentional conduct which was evidence of his purpose to forego all parental duties, that there was clear, cogent, and convincing evidence that respondent's conduct constituted willful abandonment of Lisa, and that grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(7). Because these findings are more accurately assessed as conclusions of law, we address those conclusions below.[3]

---

[3] Respondent also challenges findings of fact 117 and 118 which ultimately relate to respondent's actions and omissions constituting neglect. We decline, however, to review these findings as they relate to the trial court's adjudication of neglect under N.C.G.S. § 7B-1111(a)(1) and are not necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(7). *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58–59 ("[W]e review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's

¶ 27    Respondent next contends that the evidence and the trial court's findings of fact do not support its conclusion that he willfully abandoned Lisa. The trial court's findings of fact demonstrate that except for respondent's one "card with a note, and some presents" to petitioners for Lisa in May 2019, he made no other attempt to contact petitioners or to reestablish a relationship with Lisa during the relevant six-month period, from 3 March 2019 to 3 September 2019. The trial court found that during the six months immediately preceding the filing of the termination petition, respondent made no attempts "to otherwise contact or communicate with the minor child," did not call to inquire into Lisa's well-being, did not provide any financial support to Lisa, did not file any legal motions or filings to assert or establish his visitation rights, and did not make any attempts to show his love, care, or affection for Lisa. The court also found that respondent knew petitioners' contact information and had not been prohibited from contacting Lisa or petitioners during the relevant six-month period. Though respondent testified that he stopped sending money, cards, and gifts by February 2019 because his probation officer told him he could not have any contact with the mother's family, the trial court did not find this testimony credible.

---

parental rights."). Additionally, we decline to review respondent's challenges to findings of fact 107, 114, and 116 for the same reason.

The trial court's findings of fact demonstrate that respondent willfully withheld his love, care, and affection from Lisa during the relevant time period. Therefore, we hold the trial court did not err in concluding that respondent's conduct constituted willful abandonment and that grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(7).

## II.    Neglect

Respondent also argues that the trial court erred in terminating his rights under N.C.G.S. § 7B-1111(a)(1). Because the trial court properly terminated respondent's parental rights based upon N.C.G.S. § 7B-1111(a)(7), we need not address this argument. *See In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982) (holding that an appealed order should be affirmed when any one of the grounds found by the trial court is supported by findings of fact based on clear, cogent, and convincing evidence); *see also* N.C.G.S. § 7B-1111(a) ("The court may terminate the parental rights upon a finding of one or more [grounds for termination.]"). Accordingly, we affirm the trial court's termination order.

AFFIRMED.